FILED

04/14/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0139

## SYNOPSIS OF THE CASE[1]

**2026 MT 76, DA 25-0139: JESSICA KALARCHIK, an individual, and JANE DOE, and individual, on behalf of themselves and all others similarly situated,** Plaintiffs and Appellees, **v. STATE OF MONTANA; GREGORY GIANFORTE, in his official capacity as Governor of the state of Montana; MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES; CHARLIE BRERETON, in his official capacity as Director of the Department of Public Health and Human Services; MONTANA DEPARTMENT OF JUSTICE; and AUSTIN KNUDSEN, in his official capacity as Attorney General of the State of Montana,** Defendants and Appellants.

The Montana Supreme Court has upheld a district court's decision that preliminarily enjoined enforcement of SB 458 (2023), which defines sex as binary, and administrative rules and policies of the Department of Health and Human Services (DPHHS) and Motor Vehicle Department (MVD) (collectively, "State Policies") that would enforce SB 458 relative to the amendment of birth certificates. The Court determined SB 458's definition of sex as applied to the amendment of birth certificates and other identification documents likely violated Plaintiff's right to equal protection of the law and constituted sex discrimination, both prohibited by the Individual Dignity Clause contained in Montana's Constitution.

SB 458 provides a binary definition of "sex" under Montana law: "the biological and genetic indication of male or female" without regard to "an individual's psychological, behavioral, social, chosen, or subjective experience of gender." In response to SB 458, DPHHS announced it would amend birth certificates only if the applicant's sex was misidentified through clerical error and that it would not amend birth certificates based on gender transition, gender identity, or change of gender. Plaintiffs did not seek to have their original birth certificate record destroyed, only that they be able to obtain an amended birth certificate and driver's license matching their gender identity. Additionally, the MVD adopted a policy that would not allow amendment of the sex designation on a driver's license without a court order or a corrected birth certificate.

Kalarchik and "Jane Doe" filed a complaint in district court on behalf of themselves and others similarly situated seeking declaratory and injunctive relief from the State Policies because they violate Montana's Equal Protection Clause and constitute sex discrimination prohibited by Montana's Nondiscrimination Clause. Montana's Equal Protection Clause provides: "No person shall be denied the equal protection of the laws." Montana's Nondiscrimination Clause provides: "Neither the state nor any person, firm, corporation, or institution shall discriminate against any person . . . on account of race, color, sex, culture, social origin or condition, or political or religious ideas." Both clauses are contained in the Individual Dignity Clause of Montana's Declaration of Rights and are fundamental rights. In support of their complaint, Plaintiffs provided expert testimony that

---

[1] This synopsis has been prepared for the convenience of the reader. It constitutes no part of the Opinion of the Court and may not be cited as precedent.

medically accepted standards of care for treating people diagnosed with gender dysphoria––a serious medical condition where a person's gender does not align with their sex assigned at birth—explicitly state that changing the gender marker on identity documents is an important factor in treatment. The district court reasoned that people who do have gender identities that align with the sex assigned at their birth are able to obtain amended birth certificates, while those people whose gender identity does not match the sex assigned at their birth cannot obtain amended birth certificates and, therefore, accurate identification documents. The district court also found that it was impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.

The Montana Supreme Court agreed. After noting that Montana's Equal Protection Clause and Nondiscrimination Clause offer more protection than the federal constitution, the Court concluded that each factor required to issue a preliminary injunction was independently satisfied. It determined that the district court had not abused its discretion in preliminarily enjoining enforcement of the State Policies. The Court reasoned that Plaintiffs must present identification documents that do not reflect their gender identity and, as a result, must disclose that they are transgender each time an inquiry is made. Government issued identification documents are necessary to access public life. When they do not accurately reflect a person's sexual identity, the transgender Montanan is prevented, based on their sex, from obtaining the same attributes of public life that other Montanans may obtain. Hence, the inability of transgender Montanans to receive government-issued identification documents accurately reflecting their gender identity is fundamentally about the nature of sex and suspect class discrimination under Montana's unique Individual Dignity clause— a clause that enshrines individual dignity, equal protection, and nondiscrimination. The Court held that "transgender discrimination is, by its very nature, sex discrimination" and that "discrimination based on sex is expressly prohibited under Montana's unique Nondiscrimination Clause."

The Court held that being transgender is also a suspect class under Montana's Equal Protection Clause, which has as its central premise that persons similarly situated with respect to a governmental purpose of the law must receive like treatment. The Court determined that a transgender Montanan is similarly situated to other Montanans in their need to obtain identification documents matching their gender identity and that only transgender Montanans were prohibited from obtaining necessary identification documents.

As Plaintiffs demonstrated a likely infringement of both their fundamental right to equal protection of the law and their fundamental right to be free from discrimination on the basis of sex, the State was required to show a compelling state interest which was narrowly tailored by the State Policies. The State made no showing at all in the district court and, on appeal, maintained that it had a "weighty" interest in ensuring accuracy of vital records, furthering health and research efforts, facilitating records-matching programs, and

2

protecting women's rights. However, the Court explained that Plaintiffs were only seeking an amended birth certificate, not destruction of the original record and the State had advanced no interest that was compelling and narrowly tailored to warrant infringement of Plaintiffs' fundamental rights.

Accordingly, the Court affirmed the district court's preliminarily enjoining enforcement of the State Policies, concluding that the district court had not "obviously, evidently, or unmistakably manifestly abused its discretion," as would be required to reverse the district court's injunction. The case will now proceed to resolution on its merits.

The Special Concurrence agreed that the preliminary injunction should be affirmed but relied on the first sentence of Article II, section 4, of the Montana Constitution, which states, "The dignity of the human being is inviolable." When a person is forced to carry and display a government identification document that does not match who they look like or how they present themselves, this dishonors their dignity. The law establishes that the Plaintiffs have a right of personal autonomy privacy to live as transgender individuals. As such, like all individuals, they have a protected privacy interest in the private details of their own bodies. As long as the State's government-issued documents of identification allow a designation only for "sex" and not a designation for "gender," the Plaintiffs lack an equal ability to obtain identification documents reflecting their identity. The concurring opinion agreed that the government has a compelling interest in maintaining vital statistics and in preserving original birth records. But at issue in the Plaintiffs' challenge is their need for documents of *identification*, not the original birth record. Because the State issues government identification on the basis of the birth record alone, the Plaintiffs are unable to obtain accurate identification documents. They therefore made a preliminary showing that the Act is not narrowly tailored to serve the State's asserted interest without infringing on the right to individual dignity.

One Dissent maintained that requiring biological accuracy in the sex field of a birth certificate or other government document does not violate the Constitution, any more than requiring an accurate birth date would violate the Constitution, and emphasized that the practical effect of the Court's decision is to compel the State to issue documents containing false information. Equal protection principles are not implicated here, first, because the Court's definition of "cisgender" erroneously presupposes that every Montanan has made a conscious gender identity choice, which is not based in fact, and because gender identity is entirely subjective, making the "cisgender" class invalid for equal protection purposes. Further, the State's Policies apply uniformly to every person without exception, regardless of sex or gender: the sex field on a birth certificate or government document must reflect biological reality, and amendments are permitted only to correct entries that do not accurately reflect biological sex. National and state health statistical reporting systems are premised upon such factual accuracy. The Dissent noted that many federal circuits and the U.S. Supreme Court have squarely

3

rejected the reasoning used by the Court in this case, and the Court's departure therefrom cannot be justified by the provisions of Montana's Constitution, because equal protection analysis is not triggered at all—for the reasons stated above, there are simply no similarly situated classes of Montanans being treated differently. As far as the Special Concurrence's individual dignity theory, such a claim was neither raised in this litigation nor addressed by the District Court, and it is inappropriate for consideration on appeal.

The final Dissent joined the first Dissent. The final Dissent wrote additionally to note the Plaintiffs did not have standing to challenge the MVD policy because they failed to demonstrate MVD had a policy preventing them from obtaining a new driver's license. They therefore failed to satisfy the requirements to obtain a preliminary injunction against enforcement of the unknown MVD policy. Additionally, the Plaintiffs did not challenge the accuracy of the original birth certificate they were each issued, which accurately recorded their sex as male at the time of their birth. The Plaintiffs have essentially asked the courts to re-write the statute to change the Legislatively-drafted definition of "sex" to include "gender identity." The Legislature has the constitutional authority and mandate to write these definitions, and they are subject to rational basis review. The Legislature's definition would be upheld according to that standard. If possible, this Court should attempt to resolve issues without reaching constitutional questions and should construe laws to comport with the Constitution. Additionally, when a court adjudicates an issue subject to vigorous public debate, it should exercise prudence and rule as narrowly as possible to leave room for public discourse. The Supreme Court failed to follow these prudential policies and overstepped its authority by rewriting the statute based upon political arguments, not based on a constitutional standard.